**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 24-83-DLB-CJS**

**OCTAVIAN AKER**                                                                                          **PLAINTIFF**

**v.**                                          **MEMORANDUM OPINION AND ORDER**

**CITY OF DAYTON, et al.**                                                                              **DEFENDANTS**

* * * * * * * * * * * * * * * *

## I.      INTRODUCTION

This matter is before the Court upon the Motion for Summary Judgment by Defendants City of Dayton and Cassie Patterson (Doc. # 30) and the Motion for Partial Summary Judgment by Plaintiff Octavian Aker (Doc. # 32).  The parties having filed their respective Responses (Docs. # 37 and 38) and Replies (Docs. # 39 and 40), the Motions are ripe for the Court's review.  For the following reasons, Aker's Motion for Partial Summary Judgment is **denied,** and Defendants' Motion for Summary Judgment is **granted in part** and **denied in part**.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

This case stems from a series of administrative penalties and protocols levied by a Kentucky municipality against a landlord.  Plaintiff Octavian Aker is a property owner and landlord who owns thirteen pieces of real property in the City of Dayton, Kentucky ("the City"), a Kentucky municipality and a Defendant in this case.  (Doc. # 32 at 3).  Defendant Cassie Patterson is the City of Dayton's Code Enforcement Officer and has worked for the City since 2020.  (Doc. # 26 at 9:6–9).

1

In September 2022, the City enacted a new ordinance titled "Residential Rental License and Safety Inspection Program."  (Doc. # 30 at 4; Doc. # 32 at 3).  To comply with the ordinance, rental property owners in the city were required to acquire a rental inspection license for each property they own, submit an application form to the City for each license, and pay an annual fee per rental unit owned.  (Doc. # 32 at 3; *see also* Doc. # 1-5 at 6).  The ordinance took effect on January 1, 2023 and required each landlord to complete the application and pay the associated fees by April 15, 2023, with payment of the annual fee due on April 15th of each calendar year.  (Doc. # 1-5 at 6; Doc. # 1-6).

On January 3, 2023, the City sent all qualifying landlords, including Octavian Aker, a letter advising them of the new licensure program.  (Doc. # 25 at 28:7–29:24; Doc. # 1-6).  The letter detailed the program's requirements, including that the program had taken effect on January 1, 2023 and that property owners needed to register their properties and pay the required fees by April 15, 2023.  (Doc. # 1-6).  Aker acknowledged that he read the letter after receiving it and understood its contents.  (Doc. # 25 at 29:16–24).

The controversy of this case started on February 15, 2023, when the City issued Aker a series of citations for his failure to abide by the new ordinance.  (*See* Doc. # 1-8).  At the time he received the citations, Aker had not yet submitted any of the required applications or paid any of the required fees because he believed they were not due for another two months on April 15.  (Doc. # 25 at 75:14–19).  He received a $140 fine—$40 for the unpaid annual rental license fee, $100 as a penalty for nonpayment—for each piece of property he owned.  (Doc. # 1-8).  As part of the enforcement procedure, Aker was given the choice to either pay the fines within seven days of issuance of the citations

2

or appeal the decisions to the City of Dayton Code Enforcement Board ("the Board") for a hearing. (*Id*. at 22). He opted for the latter, submitting his written appeals of the program citations on February 21, 2023.[1] (Doc. # 25 at 48:12–24; Doc. # 26 at 99:19–25). Thirteen days later, Dayton City Code Enforcer Cassie Patterson wrote Aker a letter informing him that his appeals needed to be resubmitted on the correct forms and provided him with the required paperwork to properly submit the appeals. (Doc. # 1-9). Aker resubmitted his appeals on the correct forms on or about March 15, 2023. (Doc. # 1-10).

Aker's hearing was held before the Board on May 15, 2023, two months after filing the correct appeals and one month after he was required to have his licenses. (Doc. # 26 at 77:8–16). Aker was present at the hearing with his counsel. (Doc. # 25 at 77:22–25). Aker testified and offered evidence at the hearing, explaining that the citations were prematurely issued and substantively incorrect and conflicting. (*Id*. at 82:24–84:2; 85:18–87:1). His attorney cross-examined Cassie Patterson. (*Id*. at 87:8–23). At the end of the hearing, the Board upheld the City's citations and imposed fines against Aker for failing to register and pay the required fees for the license program. (*See* Doc. # 1-14). Aker was fined a total of $61,680.00 for his rental license violations and $500 for his vacant and abandoned properties violations, but he claims he did not receive a final version of the Board's order. (*Id*.; Doc. # 1-16 at 4; Doc. # 25 at 91:10–13). Each of the Board's Final Orders included a paragraph titled "Acknowledgment of Respondent," outlining the Respondent's acknowledgements of the Board's decision, right to appeal the decision to

---

[1]     The record reflects that the City also notified Aker that several of his properties were being considered for abandoned or blighted status. (Doc. # 1-12). Those notices did not include any fines or citations. (*Id*.). Aker submitted hearing request forms for the abandoned property notices on or about March 20, 2023. (Doc. # 26 at 114:12–14). Aker's hearing on the abandoned property notices took place on May 15, 2023, in tandem with his hearing on the rental inspection licenses. (Doc. # 25 at 76:5–77:21).

Campbell County District Court and understanding of the imposition of a lien on his properties in the event of nonpayment of the civil fines levied against him. (*See* Doc. # 1-14 at 5). There is also a signature line for Respondent's signature below each acknowledgment paragraph. (*Id.*). Curiously, each signature line is signed by Cassie Patterson, despite Aker being the listed Respondent in the case caption of each Order.[2] (*Compare* Docs. # 1-14 at 1 and 1-16 at 1 *with* Docs. # 1-14 at 6 and 1-16 at 6). Aker did not appeal the Board's decisions to the Campbell County District Court. (Doc. # 25 at 96:4–16). The City mailed Aker a Notice of Final Order for each property on June 1, 2023, which he claims he never received. (Doc. # 30-2 at 1–2, 7–8, 13–14, 19–20, 25–26, 31–32, 40–41, 46–47, 52–53, 61–62, 67–68, 73–74, 82–83; *see also* Doc. # 32 at 62 ¶ 22).

Nearly two months after the hearing, on July 5, 2023, Patterson and the City executed lien affidavits for Aker's properties pursuant to the Board's final order. (Doc. # 26 at 137:14–22). The City placed liens on Aker's properties shortly thereafter. (Doc. # 27 at 85:4–12). As part of the foreclosure process, Aker and the City entered a settlement agreement where Aker agreed to make his best efforts to sell his properties within ninety days. (Doc. # 1-18). As part of the agreement, Aker agreed to list all of his properties with a licensed real-estate broker within fourteen days of executing the agreement. (*Id.*). He further agreed to pay his debts to the City from the proceeds of the sales of his properties. (*Id.*). In exchange, the City agreed to suspend its code-enforcement activities—levying new fines and filing new liens on his properties—against him for ninety days. (*Id.*). The City also agreed to dismiss its two existing Campbell County court cases

---

[2]    Patterson acknowledged in her deposition that her name should not have been listed as Respondent and that her signing as Respondent was in error. (Doc. # 26 at 126:23–128:9).

4

against Aker.  (*Id.*).  The parties formalized this settlement agreement on July 26, 2023.  (*Id.*).

Over the next ninety days, Aker made efforts to comply with the parties' agreement.  He worked with a broker to list his properties, although it is unclear if they were ever listed in the required ninety-day window.  (Doc. # 25 at 114:25–116:11).  He sold four of his properties for a total of $27,519.72, which he used to pay a portion of his liens.  (Doc. # 32 at 60 ¶¶ 8–9).  However, he could not sell all his properties, which he claims is the fault of Patterson and the City for not honoring his buyers' information requests.  (Doc. # 25 at 137:25–138:15).  Regardless of fault, on February 6, 2024, Dayton City Administrator Jay Fossett notified Aker that the City would be withdrawing the settlement agreement because Aker failed to comply with his side of the agreement.  (*See* Doc. # 1-21).  As part of the termination, the City required Aker to pay the liens on his properties in full and resumed its code-enforcement activities against Aker's properties.  (*Id.*).

Aker filed his Complaint in this Court on May 14, 2024.  (*See* Doc. # 1).  In his Complaint, he asserts four causes of action: violations of his right to due process under the Fourteenth Amendment (Count One); violations of his right to due process under the Kentucky Constitution (Count Two); slander of title (Count Three); and negligence against Cassie Patterson in her individual and official capacities (Count Four).[3]  Defendants filed their Answer on August 9, 2024.  (*See* Doc. # 8).  The parties then engaged in discovery for nearly sixteen months.  At the end of the discovery period, both parties filed Motions

---

[3]     Aker also brings a claim for attorney's fees under 42 U.S.C. § 1988 (Count Five), stemming from the City's alleged violations of his civil rights.

for Summary Judgment.  (Docs. # 30 and 32).  Both Motions having been fully briefed, the matter is ripe for the Court's review.

## III.   ANALYSIS

### A.   Standard of Review

Federal Rule of Civil Procedure 56 allows for the granting of summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party or parties bear the burden of showing an absence of a genuine issue of material fact.  *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008).  A genuine dispute as to a material fact exits where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Once the movant has satisfied its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Id*. at 586.  At this stage, the Court must not weigh evidence or make credibility determinations but instead must ascertain whether there is a genuine issue for trial.  *Moran v. Al Basit LLC*, 788 F.3d 201, 204 (6th Cir. 2015) (quoting *Anderson*, 477 U.S. at 249).  In making this determination, the Court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact."  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989).  Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to

create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). Further, the Court applies the same standard of review to cross-motions for summary judgment as it does when only one party files. *McKim v. NewMarket Techs., Inc.*, 370 F. App'x 600, 603 (6th Cir. 2010). The Court evaluates each motion on its own merits, drawing all reasonable inferences against the party whose motion is under consideration. *Beal ex rel. Putman v. Walgreen Co.*, 408 F. App'x 898, 902 (6th Cir. 2010). The Court will address each party's Motion for Summary Judgment individually and in turn, beginning with Plaintiff Aker's Motion.

### B.    Aker's Motion for Summary Judgment

Aker moves for summary judgment on all four counts brought in his Complaint. The Court will begin its analysis with Count One.

### 1.    Federal Due Process Violations

In Count One, Aker asserts a claim under 42 U.S.C. § 1983, claiming that the City and Patterson violated his right to due process under the Fourteenth Amendment. (Doc. # 1 ¶¶ 167–206). Title 42 U.S.C. § 1983 authorizes an individual to bring suit "against anyone who, under color state law, deprives a person of rights, privileges, or immunities secured by the Constitution or conferred by federal statute." *Wurzelbacher v. Jones-Kelly*, 675 F.3d 580, 583 (6th Cir. 2012). To state a claim under § 1983, a plaintiff must allege that (1) some person deprived her of a federal right; and (2) that the person depriving her of that right acted under color of state or territorial law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Municipalities may be held liable for 1983 claims if the municipality itself caused the constitutional deprivation. *Lausin ex rel. Lausin v. Bishko*, 727 F. Supp. 2d 610, 626 (N.D. Ohio 2010) (citing *Monell v. New York City Dept. of Soc.*

7

*Servs*, 436 U.S. 658, 690 (1978)).  To prove a municipality's liability under § 1983, a plaintiff "must show that 'through its deliberate conduct, the municipality was the "moving force" behind the injury alleged.'"  *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019) (quoting *Alman v. Reed*, 703 F.3d 887, 903 (6th Cir. 2013) (quotation omitted)).

The Fourteenth Amendment's Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. amend. XIV § 1.  The Fourteenth Amendment protects two distinct kinds of due process— substantive and procedural.  *Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 833 F.3d 590, 604 (6th Cir. 2016).  Aker alleges the City and Patterson violated both his procedural due process rights and his substantive due process rights.  The Court will address each claim in turn.

### a.    Substantive Due Process

The doctrine of substantive due process accords that "governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of procedures employed."  *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992).  Specifically, substantive due process protects from government interference "those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed."  *Guertin v. State*, 912 F.3d 907, 918 (6th Cir. 2019) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720– 21(1997)).  Indeed, "[t]he interests protected by substantive due process are of course much narrower than those protected by procedural due process."  *Bell v. Ohio State Univ.*, 351 F.3d 240, 250–51 (6th Cir. 2003).  As such, substantive due process protects

8

"interests protected by specific constitutional guarantees; interests so rooted in the traditions and conscience of our people as to be deemed 'fundamental rights;' and the right to freedom from government actions so arbitrary and abusive as to 'shock the conscience.'" *Puckett v. Lexington-Fayette Urb. Cnty. Gov't*, 566 F. App'x 462, 472 (6th Cir. 2014) (quoting *Bell*, 351 F.3d at 249–50).

The Sixth Circuit has identified two kinds of actionable substantive due process violations. First, a claimant can succeed if they show that the government violated an explicit constitutional guarantee. *Braley v. Pontiac*, 906 F.2d 220, 225 (6th Cir. 1990). Second, a claimant can succeed if they show government actions that "shock the conscience." *Id*. at 224–25 (quoting *Wilson v. Beebe*, 770 F.2d 578, 585–86 (6th Cir. 1985) (en banc)). The latter type of claim "does not 'require[] a claim that some specific guarantee of the Constitution apart from the due process clause be violated . . . This is a substantive due process right akin to the 'fundamental fairness' concept of procedural due process.'" *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 724 (6th Cir. 1996) (quoting *Beebe*, 770 F.2d at 586). Aker maintains that his substantive due process claim succeeds under either framework. (Doc. # 32 at 28–31).

Before starting its analysis, the Court must identify the analytical standard that applies to Aker's substantive due process claims. Both parties correctly identify that "[w]here a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims." *Johnson v. City of Cincinnati*, 310 F.3d 484, 490–91 (6th Cir. 2002)

9

(quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)).  However, the parties differ on which standard the Court should apply.

Aker asserts that the Court should analyze his claims under the Fourth Amendment's reasonableness standard that governs searches and seizures because the City wrongfully deprived him of his property.  (Doc. # 32 at 31).  The Court rejects this argument because the record is clear that Aker never pled an unlawful seizure in violation of the Fourth Amendment.  (*See* Doc. # 1 ¶¶ 167–206).  While it is true that he alleges unlawful deprivations of his properties, he does not allege the deprivations violated his Fourth Amendment rights.  Rather, he claims that the deprivations he suffered violated his right to due process under the Fourteenth Amendment.  (*Id*. ¶¶ 166, 170, 200–03, 206).  Indeed, nowhere in his Complaint does he even *mention* the Fourth Amendment. This puts him at odds with the plaintiffs in *Partin v. Davis*, a Sixth Circuit case Aker cites for the proposition that a court should adopt the reasonableness standard of the Fourth Amendment where a plaintiff alleges that a state actor unreasonably seized their property. 675 F. App'x 575 at 581–82 (6th Cir. 2017).  The principal difference is that the plaintiffs in *Partin* specifically alleged a violation of the Fourth Amendment—Aker did not. Accordingly, the Court will decline to apply the Fourth Amendment's reasonableness standard to Aker's substantive due process claims.  Instead, the Court will apply the traditional substantive due process standard and will look at whether the City's conduct toward Aker is either an explicit constitutional violation or enough to "shock the conscience." *Braley*, 906 F.2d at 224–25.

To start, Aker's claims cannot satisfy the first *Braley* requirement because his pleadings are not based on an explicit constitutional guarantee.  To satisfy this prong,

10

Aker initially claims that he has two constitutionally protected interests in his properties and capital he receives from his properties.  (Doc. # 32 at 28).  However, these are not the traditional kinds of fundamental rights that receive protection under substantive due process.  *See Albright*, 510 U.S. at 272 ("[T]he protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity."); *see also Lambert v. Hartman*, 517 F. 3d 433, 443–446 (6th Cir. 2008) (declining to find a violation of a fundamental right where plaintiff alleged a diminishment of her property interest).  And as noted *supra*, Aker's claims are not based on violations of a specific constitutional provision, such as the Fourth Amendment's guarantee of freedom from warrantless searches and seizures or the Fifth Amendment's guarantee against takings of privately owned property.  Rather, his allegations are based on procedural concerns involving his properties that he claims violate his rights to substantive due process.  (Doc. # 1 ¶¶ 173, 179 ("As to the substantive due process violations, the City of Dayton cited the wrong Chapter and Section of its Code of Ordinances . . . therefore failing to provide Aker with adequate notice of the alleged violations.")).  These allegations, while frustrating in nature, are not made pursuant to any constitutionally codified principles, like freedom from unjust government takings or freedom from unlawful seizures.  *See Fluellen v. U.S. Dept. of Just. Drug Enf't Admin.*, 816 F. Supp. 1206, 1214 (E.D. Mich. 1993) (allowing substantive due process claims to continue because plaintiff adequately stated a claim based on Fourth Amendment violation).  Without more, Aker's claims cannot survive the first *Braley* criterion.

That leaves the Court to determine whether Defendants' conduct "shocks the conscience."  The Supreme Court has held that "the substantive component of the Due

11

Process Clause is violated by executive action only when it 'can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.'" *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998).  The contours of the "shocks the conscience" test are difficult to define, especially in the property context, as the test is most commonly applied in cases involving physical abuse.  *Puckett*, 566 F. App'x at 472.  However, the Sixth Circuit has found that "[m]erely negligent tortious conduct is categorically beneath constitutional due process, but conduct on the other extreme end of the culpability spectrum, that which is 'intended to injure' without any justifiable government interest, most clearly rises to the 'conscious-shocking' level." *Range v. Douglas*, 763 F.3d 573, 590 (6th Cir. 2014) (quoting *Lewis*, 523 U.S. at 848–49).  "Conduct that is more akin to recklessness or gross recklessness, such as deliberate indifference, is a 'matter for closer calls.'" *Id*.  The inquiry requires "an exact analysis of circumstances before any abuse of power is condemned as conscience shocking." *Id*.

Aker claims that Defendants' enforcement actions against him clearly meet the required "shocks the conscience" standard.  (Doc. # 38 at 8).  Specifically, Aker alleges that

> Patterson prematurely issued citations under the Ordinance, waited until after the Compliance Deadline to schedule the Code Enforcement Board Hearing, assessed Fines while Plaintiff's appeal was pending, recommended statutorily calculated Fines in excess of the amount accrued and permitted under the Ordinance, executed false Lien Affidavits for the erroneously calculated Liens, and refused to cooperate with the necessary payoff and Lien verification process for potential buyers of the Properties. Similarly, the City knowingly leveraged the premature Rental License Citations to assess Fines against Plaintiff and his Properties, prewrote Final Orders before the Hearing, utilized admittedly false Lien Affidavits to place Liens upon Plaintiff's Properties, and applied Plaintiff's 2024 Rental License payment to 2023, which had already been recovered.

(Doc. # 38 at 8 (internal citations omitted)).

12

Aker claims these actions were "an admittedly targeted enforcement effort against [Aker] to expel him from the City." (*Id.* (citing Doc. # 27 at 39:20–23, 156:24–25)).

The Court finds that Aker has not met his burden of proving no genuine issue of material fact that Defendants' conduct would "shock the conscience." Simply put, viewing the facts in the light most favorable to the non-moving party, a reasonable jury could find that Defendants acted reasonably in enforcing the municipal code. As a result, Aker has failed to carry his burden and summary judgment is inappropriate. Defendants issued their citations under a provision of the Dayton City Code, as they were permitted to do.[4] (*See* Doc. # 1-4 at 4, 9). Defendants assessed fines for failure to comply with a relevant code section, which they were, again, permitted to do. (*See id.* at 9 ("Any person or legal entity that violates a provision of this ordinance shall be subject to a civil fine . . . .")). Defendants assessed Aker a fine, allowable by Dayton code. (*Id.*). Defendants placed liens on properties that were in violation of the code, as they are also allowed to do. (*Id.* ("The City shall possess a lien on the property for all fines, penalties, charges . . . associated with enforcing this subchapter. . . ."). They prepared an Order after Aker's hearing, which included factual findings and the decision of the Board. (Doc. # 27 at 65:2–13). These are all common steps in a municipality's code enforcement process, such that a reasonable jury could find that Defendants merely abided by their standard process.

---

[4] Patterson has admitted that the citations were mistakenly issued in February, but she could not recall if the City issued correction letters. (Doc. # 26 at 96:25–97:18). The Court also recognizes that the code sections cited in the citations—Chapters 158.83 and 84 of the Dayton City Code—do not exist. (*See* Dayton, KY Code of Ordinances §§ 158.01–158.12). The citations do, however, cite the language and substance of the relevant code sections relating to the rental citation program. (*See generally* Doc. # 1-4).

13

The Court is not ignorant to the fact that Defendants made a series of factual errors that muddied the entire enforcement process.  Indeed, Aker makes note of those mistakes and bases his substantive due process claims on them.  (See Doc. # 32 at 27–31).  However, the Sixth Circuit has been quick to note that negligent behavior, such as making factual errors by employees, on its own does not rise to the level of conscience-shocking behavior.  *Chambers v. Sanders*, 63 F.4th 1092, 1097 (6th Cir. 2023) (citing *Lewis*, 523 U.S. at 849)).  Accordingly, without more, Aker is not entitled to summary judgment on his substantive due process claim.

### b.      Procedural Due Process

"An essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)).  To prove a procedural due process claim, Aker must show he (1) had a life, liberty or property interest protected by the Due Process Clause; (2) was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of his protected interest.[5]  *R.M. Through K.M. v. Boone Cnty. Pub. Schs.,* No. CV 23-9-DLB-CJS, 2025 WL 3516464, at *4 (E.D. Ky. Dec. 8, 2025) (quoting *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012)).  "'Procedural due process' at its core requires notice and an opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  *Garcia v. Fed. Nat.*

---

[5]      Both Aker's and Defendants' arguments hinge on the third requirement.  (*See* Docs. # 30 at 10–11 and 32 at 28).  Thus, the Court will focus its analyses of both parties' procedural due process claims on whether the City afforded Aker adequate procedural rights before allegedly depriving him of his property.

*Mortg. Ass'n*, 782 F.3d 736, 741 (6th Cir. 2015) (citing *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

### i.     Notice

Aker first contends that Defendants did not provide him with meaningful notice of his violations of the rental license ordinance prior to issuing him a citation.  (Doc. # 32 at 33).  He further alleges that the City's early issuance of the citations and erroneous code citations invalidate any "meaningful" notice the City could have issued.  (*Id.*).  Aker also alleges that Defendants did not provide him with meaningful notice of the final orders after his hearing because they did not provide him with copies of the final orders, which he claims kept him from knowing valuable information about his case and rights.  (*Id*. at 34).  Finally, he claims the final orders from his hearing were facially deficient because they contained incorrect information about which sections of the ordinances he violated.  (*Id*. at 34–35).

"To satisfy due process under the Constitution, notice must be 'reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections,' and 'must afford a reasonable time for those interested to make their appearance[.]'" *DePiero v. City of Macedonia*, 180 F.3d 770, 788 (6th Cir. 1999) (quoting *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950)).  What makes up meaningful notice will differ from case to case, as the requirements of due process are "fluid and fact dependent." *Shoemaker v. City of Howell*, 795 F.3d 553, 559 (6th Cir. 2015).  In municipal settings, the Sixth Circuit has held that a city government's violation of a local ordinance only violates the Due Process Clause to the extent that the procedures afforded were also

constitutionally deficient. *Chandler v. Vill. of Chagrin Falls*, 296 F. App'x 463, 472 (6th Cir. 2008) (internal citations omitted).

The Court finds that a reasonable jury could find that Defendants provided Aker with meaningful notice at every step of the process. First, Aker received a citation—i.e. a notice that his properties were in violation of the City's ordinance—at each of his thirteen properties in Dayton. (*See* Doc. # 1-8; *see also* Doc. # 25 at 38:8–15). He knew the citations referred to the new licensing ordinance, despite the miscited code. (Doc. # 25 at 37:8–38:15). He received the citations in writing and acknowledges that each citation provided instructions on how to appeal the citation to the Board. (*Id*. at 39:5–23, 48:12–24). Clearly Aker knew he was being fined for violating the rental license citation and knew he could object to the Board's decision. Under any common understanding, he had notice of the violations against him. And while Aker now argues that the notice was not "meaningful" because the City cited him early and cited the wrong code provisions, these new claims cannot overcome the fact that he was aware that he was in violation of the rental license ordinance. Indeed, he was apprised of the pendency of the action through the citations and given an opportunity to present his objections before the Board through an appeal, as the Constitution requires. *DePiero*, 180 F.3d at 788.

Aker's arguments about the final orders after his hearing are even less availing. To start, Aker was present for the entire Board hearing and was present for the Board's decision at the end of the hearing. (*Id*. at 77:22–25, 90:25–26:6). Indeed, he was present for the Board's recitation of its decision against him. (*Id*. at 89:8–25). While there is a question of fact about whether Aker received physical copies of final orders, there is no question he was made aware of his ability to appeal the Board's decision to a Kentucky

16

state court. (*Id*. at 90:4–24). Again, while the notice was not perfectly in keeping with the City's provisions, Aker still had notice of the decisions made against him and his ability to appeal those decisions. That is enough to satisfy the due process notice requirements.

Finally, Aker contends the City did not provide him with adequate notice of the placement of liens on his property. His principal argument is that Defendants foreclosed on the liens in two months, which is much faster than they normally would. (Doc. # 32 at 35). Notably, Aker does not specifically allege any issue in receiving notice of the liens. Further, as described *supra*, Defendants provided Aker with notice of his violations of the ordinance and of the Board's final decisions. Indeed, all thirteen of the citations Aker received had a paragraph about the possibility of fines and the rental license ordinance. (Doc. # 1-8). And the rental license ordinance itself states that the City possesses a lien on the property for all fines associated with the ordinance. (Doc. # 1-4 at 9). It thus follows that Aker, who received adequate notice of both the violations against him and the Board's decision against him, was on notice of the issuance of liens against his properties. As such, the Court finds that Defendants provided Aker with adequate notice on all facets of his claim.

### ii.   *Opportunity to be Heard*

Aker additionally claims Defendants deprived him of a meaningful opportunity to be heard prior to depriving him of his properties. (Doc. # 32 at 35–36). He alleges that his hearing was not a meaningful opportunity to be heard because Defendants scheduled it for one month after the compliance deadline. (*Id*. at 36). He further contends his hearing was not meaningful because Defendants wrote the final orders before the hearing

actually took place, which he claims showed that "the City had already made its decision beforehand."  (*Id.*).

As mentioned, due process is a fluid concept that requires a case-by-case analysis to determine if the process afforded was adequate given the alleged constitutional deprivations.  *See Shoemaker*, 795 F.3d at 559.  But the crux of the procedural due process analysis is whether a plaintiff received an opportunity to be heard at a meaningful time and in a meaningful manner.  *Armstrong*, 380 U.S. at 552.  This includes a right to a hearing before a neutral decisionmaker.  *Hicks v. Comm'r of Soc. Sec.*, 909 F.3d 786, 797 (6th Cir. 2018).

Here, Aker received a constitutionally adequate hearing where he had the opportunity to be heard before a neutral decisionmaker.  The record reflects that Aker testified and put on evidence at the hearing before the Board.  (Doc. # 25 at 78:9–17, 86:17–87:23).  He had counsel representing him at the hearing, who asked questions and argued on his behalf.  (*Id*. at 87:24–89:7).  At the end of the hearing, the Board provided Aker with a decision based on the evidence he presented and the Board's prior findings.  (*Id*. at 89:8–19).  This hearing, by all accounts, provided Aker with the opportunity to present his side of the story through his own testimony and evidence before the City rendered a final decision.  That is precisely what the Due Process Clause envisions— meaningful opportunity to challenge a deprivation before the governments acts to deprive.  *Armstrong*, 380 U.S. at 552.

Aker's main issue with the proceeding is that Defendants wrote the final order ruling against him before conducting the hearing.  (Doc. # 32 at 36).  But Aker does not cite any Sixth Circuit or federal case law that supports his objection to the City's process

18

regarding his federal due process rights.  Indeed, he cites several Kentucky state law cases that supposedly support his position, but nothing that would bind or persuade this Court.  (*See* Doc. # 38 at 15).  Nevertheless, he claims that Defendants' preparation of the final order before the hearing and Patterson's recommendation of action before the hearing deprived him of a truly meaningful opportunity to present his side of the story because, in his words, "the fix was in."  (Doc. # 32 at 36–37, 44–45).  But in making this argument, Aker ignores that both Patterson and Fossett testified that the preparation of an order before a Board hearing is part of the City's administrative process that merely reflects the decision of the Board at the hearing.  (Doc. # 26 at 46:5–47:8; Doc. # 27 at 57:12–24, 62:23–63:14).  And Aker has not shown that the Board—the deciding body in his case—was a biased decisionmaker.  The fact remains that Aker received a hearing in front of the Board before the Board took action against him, and that is all the Constitution requires at this juncture.  Accordingly, the Court finds that Aker is not entitled to summary judgment on his procedural due process claims and his Motion is **denied** as to Count One.[6]

### 2.    *Kentucky Constitution Violations*

In Count Two, Aker alleges that Defendants violated his rights under the Kentucky Constitution.  Specifically, Aker contends that Defendants interfered with his rights under Section 14 of the Kentucky Constitution, which entitles individuals and entities to due process for any injury done to their lands, goods, person, or reputation.  (Doc. # 1 ¶ 208). His claims largely mirror his federal due process claims, such that he contends that

---

[6]    Given the denial of Count One, the Court need not determine whether Cassie Patterson is entitled to qualified immunity on Aker's due process claims.

because he is entitled to summary judgment on his federal due process claims, he is entitled to summary judgment on his state due process claims. (Doc. # 32 at 46).

Both parties note that Kentucky courts generally interpret state due process claims in a way that mirrors federal Due Process claims. *Francis v. Marshall*, No. CIV.A. 07-240-ART, 2010 WL 4053572, at *3 (E.D. Ky. Oct. 14, 2010) (citing *Romero v. Admin. Off. of Cts.*, 157 S.W.3d 638, 640–41 (Ky. 2005)). Since the Court has determined *supra* that Aker is not entitled to summary judgment on either variation of his federal due process claims, he is not entitled to summary judgment on his Kentucky due process claims. *Supra* § III(B)(1). Accordingly, Aker's Motion is **denied** as to Count Two.

### 3.    *Slander of Title Claim*

Next, Aker moves for summary judgment on his state law slander of title claim. Slander of title is a type of injurious falsehood that stems from an injury to land that interferes with the "vendibility of land or a transferable interest in land." *Bingham v. Kentucky Found. for Women, Inc.*, No. 3:24-CV-211-CRS, 2025 WL 725750, at *3 (W.D. Ky. Mar. 6, 2025) (citing *Ballard v. 1400 Willow Council of Co-Owners, Inc.*, 430 S.W.3d 229, 235 (Ky. 2013)). To maintain a slander of title action, a plaintiff must show that the defendant has "knowingly and maliciously communicated, orally or in writing, a false statement which has the effect of disparaging the plaintiff's title to property[.]" *Bonnie Braes Farms, Inc. v. Robinson*, 598 S.W.2d 765, 766 (Ky. Ct. App. 1980). A plaintiff must also show special damages arising from the false statement in the form of an inability to sell or a diminution in market value. *Bingham*, 2025 WL 725750, at *3. Finally, a plaintiff must plead malice on the part of the defendant, which can include allegations of false

20

statements that the defendant knows to be false.  *Id*. (quoting *Ideal Sav. Loan & Bldg. Ass'n of Newport v. Blumberg*, 295 Ky. 858, 175 S.W.2d 1015, 1017 (1943)).

Aker contends that he's made the required showing such that summary judgment should be granted in his favor.  He points to Defendants' lien affidavits, which he claims the City executed despite knowing the affidavits contained false information.  (Doc. # 32 at 48–49).  He claims that by drafting and eventually executing these known falsehoods, Defendants acted maliciously and unlawfully.  (*Id*. at 49).  Finally, he claims Defendants' malicious false statements caused him special damages in the form of lost tenants from his properties, loss of sales of his properties, diminution of the value of his properties and lost opportunities to purchase other properties.  (*Id*.).

The parties both note that Kentucky courts have not affirmatively determined whether a lien may constitute the basis for a slander of title claim.  (Docs. # 30 at 23, 32 at 47 n.3 (citing *Thompson v. Lake Cumberland Resort Cmty. Ass'n, Inc.*, No. 2021-CA-1419-MR, 2022 WL 4587624, at *3–4 (Ky. Ct. App. Sept. 30, 2022)).  In *Thompson*, the Kentucky Court of Appeals took up the issue of whether a lien can form the basis of a slander of title claim but ultimately left the question for another day and decided the claim on other grounds.  *See* 2022 WL 4587624, at *3–4.  In that case, the court determined that the plaintiffs had shown evidence of neither a malicious statement nor special damages, which doomed plaintiffs' slander of title claim.  *Id.* at *4.  Thus, the question of whether a lien may enable a slander of title action remains unanswered by Kentucky courts.  And because the issue is still unanswered, this Court will follow the Sixth Circuit's guidance and will decline to rule on this untouched issue of Kentucky law.  *See Jackson v. City of Cleveland*, 925 F.3d 793, 808 (6th Cir. 2019) (finding that federal courts should

avoid undetermined issues of state law because state courts are "in the better position to apply and interpret" their own jurisdiction's law).

The Court does find, however, that Aker failed to prove he incurred special damages as a result of the alleged false statements.  The damages Aker alleges— removal of profitable tenants, rapid efforts to sell his properties, loss of sale of the properties, diminution in values of his properties and lost opportunities to purchase other properties—are due, by Aker's own allegations, to Defendants' failures to timely or accurately respond to potential buyers, not from the existence of liens on his properties. (*See* Doc. # 1 ¶¶ 123–132, 140–151; Doc. # 32 at 61–62).  Indeed, he does not allege anywhere that he lost out on a sale of one of his properties because of the lien on the property or because of one of the allegedly false statements in the lien affidavits.  Further, he does not provide any evidence that the value of his properties diminished *at all*, not to mention because of the liens on the properties.  There is simply not enough in Aker's pleadings to allow the Court to conclude he suffered any kind of special damages from Defendants' liens on his properties.  *Bonnie Braes Farms*, 598 S.W.2d at 767.  Without more, the Court cannot grant summary judgment in his favor and must **deny** his Motion as to Count Three of his Complaint.

### 4.   Negligence

Aker's final claim is for negligence against Cassie Patterson in her official and individual capacities.  A claim of negligence under Kentucky law requires a plaintiff to show (1) the defendant owed the plaintiff a duty of care; (2) a breach of that duty by the defendant; (3) causation that links defendant's breach to plaintiff's injuries; and (4) damages resulting from the breach.  *Patton v. Bickford*, 529 S.W.3d 717, 729 (Ky. 2016)

(citing *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88 (Ky. 2003)).  A public official's compliance with ministerial duties of their job—i.e. performing the duties outlined by rule, policy or regulation—is relevant when conducting a negligence analysis.  *Meinhart v. Louisville Metro Government*, 627 S.W.3d 824, 830 (Ky. 2021).

Aker first claims that, as the City's Code Enforcement Officer, Patterson has a ministerial duty to "enforce 'all ordinances relating to buildings or structures, blight, and other ordinances as directed by the City Council.'"  (Doc. # 32 at 49 (internal citations omitted)).  Aker claims Patterson breached this duty in a number of ways, specifically by making false statements in lien affidavits, failing to provide Aker with copies of the Board's final orders, improperly signing the final orders on Aker's behalf, and failing to provide Aker with notice before issuing code enforcement citations.  (*Id*. at 49–50).  Further, Aker claims that Patterson's actions are the but-for and proximate cause of his various injuries.  (*Id*. at 50).  Finally, Aker claims he suffered "significant and special damages" as a result of Patterson's negligence.  (*Id*. at 51).

The Court finds that Aker did not meet his burden of proving Patterson's negligence.  To start, Defendants do not address Aker's claims that Patterson owed and subsequently breached a duty of care to Aker, so the Court will treat those as unchallenged.  (*See* Docs. # 37 and 39).  However, Aker cannot effectively show that Patterson's actions caused his injuries because he does not put forth evidence that his injuries would not have occurred but for Patterson's actions.  To prove causation, a plaintiff must show that the defendant's actions were both the cause in fact and the proximate cause of his or her injuries.  *Patton*, 529 S.W.3d at 730.  Causation in fact— also called but-for causation—requires "the existence of a direct, distinct, and identifiable

23

nexus between the defendant's breach of duty (negligence) and the plaintiff's damages such that the event would not have occurred 'but for' the defendant's negligence or wrongful conduct in breach of a duty." *Id*.  Further, "an act or omission is not regarded as a cause of an event *if the particular event would have occurred without it*."  *Id*. (citing *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 176–77 (2009)) (emphasis added). The last part is instructive here because Aker has put forth no evidence that his injuries would not have occurred without Patterson's so-called negligence.  First, Aker has not said, indicated, or shown that he planned to pay his license fees before the April 15 deadline to put himself in compliance with the ordinance.[7]  In fact, there is no evidence that he *ever* paid his required fees for 2023, even after his hearing.  (Doc. # 25 at 148:19–150:8).  Further, Aker's assertion that his injuries would not exist without Patterson's allegedly negligent conduct is plainly incorrect.  Even if Patterson had followed every single procedure to the letter, Aker still would have been subject to liens, fines and fees because he did not properly appeal the Board's decision to a state district court. Patterson's actions were part of the enforcement process the City utilizes to enforce its various code provisions and Patterson performed them accordingly.  Because the Court finds that Aker's injuries would have occurred without Patterson's actions, he cannot

---

[7]    Aker contends that he was in compliance with the rental license ordinance when Patterson and the City issued him his citations in February 2023.  (Doc. # 40 at 13–14).  A plain reading of the ordinance shows that the Rental License and Safety Inspection Program went into effect on January 1, 2023, having been adopted at a Dayton City Counsel meeting on September 6, 2022. (Doc. # 1-5 at 1–6).  Further, the letters that the City sent on January 3, 2023—which Aker received—clearly reflect that the City's ordinance went into effect on January 1, 2023. (Doc. # 1-6).  So, when Aker says that his properties complied with the ordinance on February 15, 2023, despite having not paid the license fee or filled out an application for any of his properties, that is patently untrue.

24

sufficiently prove Patterson's actions were the cause of his injuries. Accordingly, his Motion will be **denied** as to Count Four of the Complaint.

### C.   Defendants' Motion for Summary Judgment

The Court now turns to Defendants' Motion for Summary Judgment, in which they also seek judgment as a matter of law on all counts of Aker's Complaint.

### 1.   *Federal Due Process Claims*

For consistency's sake, the Court will address Defendants' Motion for Summary Judgment in the same order it addressed Aker's Motion. Accordingly, the Court will begin with Defendants' arguments on substantive due process.

### a.   Substantive Due Process

To start, Defendants maintain that Aker should have pled his claims under the Fifth Amendment's Takings Clause and because he did not, his substantive due process claims cannot proceed because another constitutional provision better applies. (Doc. # 30 at 15–16). They claim that Aker's theory rests on allegations that "the City 'took' his property, 'constructively deprived' him of his real estate, or wrongfully interfered with his ability to sell or retain it." (*Id*. at 15). They ask the Court to grant summary judgment because substantive due process does not apply to Aker's claims.

The Court will not dismiss the claims outright, as Defendants request. While the alleged takings and deprivations are part of Aker's cause of action, Aker does not allege the City took his properties for public use. (Doc. # 38 at 5). Rather, he alleges that they took them to personally attack him and rid him from the City. (Doc. # 32 at 30). And what's more, Aker's Complaint does not mention the Fifth Amendment in any capacity,

25

much less a direct invocation of the Takings Clause.  (*See generally* Doc. # 1). Accordingly, the Court moves on to Defendants' merits arguments.

Having determined *supra* that Aker did not sufficiently allege an explicit constitutional violation, the Court need only address whether Defendants have illustrated that their conduct did not affirmatively "shock the conscience."  *See supra* § III(B)(1)(a). Defendants, for their part, allege that their conduct consists of "routine municipal enforcement steps," such that the behavior falls short of the constitutionally arbitrary kind that garners relief.  (Doc. # 30 at 18).  They further assert that the City has a "considerable interest" in enforcing its municipal code and protecting renters in the community.  (*Id*. at 18–19 (internal citations omitted)).

The Court finds that a reasonable jury could determine that Defendants' behavior "shocks the conscience."  The Court believes that, given the extent, number, and nature of Defendants' errors and how they cascaded as this lawsuit has progressed, this issue is best addressed by the trier of fact.  While the individual steps in the process do not rise to the level of arbitrary or conscience-shocking, the collective actions taken together very well may.  That is for the jury to decide.  Thus, Defendants' Motion is **denied** as to the substantive due process portion of Count One.

### b.   Procedural Due Process

Defendants next maintain that they are entitled to summary judgment on Aker's procedural due process claims.  (Doc. # 30 at 7).  Defendants first claim that Aker's procedural due process claim cannot continue because he failed to plead the inadequacy of the state remedial procedures prior to making his federal due process claim.  (Doc. # 30 at 7–10).  They contend that Aker did not claim that the City's administrative

procedures or judicial remedies under Kentucky law were inadequate to accord him relief. (*Id*. at 8).   Defendants also claim that Aker did not allege that either scheme was constitutionally insufficient.  (*Id*. at 9).

Thus, the issue at play is whether the *Parratt* doctrine applies to Aker's claims.  In *Jefferson v. Jefferson County Public School System*, the Sixth Circuit established that a plaintiff pleading a procedural due process violation under § 1983 must first plead and prove the inadequacy of the state and administrative processes available to him or her. 360 F.3d 583, 588 (6th Cir. 2004) (citing *Parratt v. Taylor*, 451 U.S. 527 (1981)).  However, the Sixth Circuit has since tweaked this holding, determining that a plaintiff need not demonstrate the inadequacy of state procedures unless the deprivation arose from a random or unauthorized act.  *Mitchell v. Fankhauser*, 375 F.3d 477, 483–84 (6th Cir. 2004); *see also Rodgers v. 36th Dist. Ct.*, 529 F. App'x 642, 649 (6th Cir. 2013) (same). And in *Daily Services, LLC v. Valentino*, the Sixth Circuit applied the three-step test from *Zinermon v. Burch*, 494 U.S. 113 (1990) to determine whether the *Parratt* doctrine applies when a plaintiff does not plead inadequacy of a state or administrative process.  756 F.3d 893, 907 (6th Cir. 2014) ("Where, as here, a plaintiff claims that the conduct at issue was not random and unauthorized but also does not challenge the adequacy of an established state procedure, we undertake a 'careful scrutiny' of the three *Zinermon* factors to determine whether the *Parratt* doctrine applies.").  It follows that courts may dismiss a procedural due process claim if the state provides an adequate post-deprivation remedy and "(1) the deprivation was unpredictable or 'random'; (2) predeprivation process was impossible or impracticable; and (3) the state actor was not authorized to take the action

27

that deprived the plaintiff of property or liberty." *Id*. (quoting *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995)).

In this case, a clear review of Aker's pleadings demonstrates that he did not challenge the adequacy or constitutionality of the City's administrative procedures.  He also did not challenge the Commonwealth's review of the Board's determinations.  Thus, the Court will look to the *Zinermon* factors to determine whether Aker's claim can continue.

The *Parratt* doctrine does not apply here because the second *Zinermon* factor is not present.  This is because predeprivation process took place.  Indeed, Aker received a hearing before the Board at which he put on evidence and testified.  (*See* Doc. # 25 at 78:9–17, 86:17–87:23).  Process cannot be impossible or impracticable when it actually occurs.  Accordingly, the Court will move to Defendants' procedural due process arguments.

Next, Defendants claim that Aker received all the process he was due by the Constitution.  (Doc. # 30 at 10–11).  They contend that the notice and opportunity they provided Aker was constitutionally sufficient to comply with the Fourteenth Amendment and that they are entitled to summary judgment as a result.  (*Id*. at 11–14).  For all the reasons stated *supra*, the Court agrees.  *Supra* § III(B)(1)(b).  The Constitution only requires notice and an opportunity to be heard at a meaningful time and in a meaningful manner.  *Garcia*, 782 F.3d at 741.  Aker received both notice of his violations and a meaningful opportunity to challenge them before a neutral decisionmaker.  Accordingly, Defendants' Motion is **granted** as to the procedural due process portion of Count One.

28

### 2.    *Kentucky Constitution Violations*

Defendants next challenge Aker's Kentucky Constitution claims. Specifically, Defendants point to numerous Kentucky cases that establish that Kentucky law does not recognize a cause of action for monetary damages for a violation of rights under the Kentucky Constitution. (Doc. # 30 at 22 (collecting cases)). Indeed, that principle is well recognized at both the federal and state levels. *See St. Luke Hosp., Inc. v. Straub*, 354 S.W.3d 529, 536 (Ky. 2011); *Williams v. City of Stanford, Kentucky*, 533 F. Supp. 3d 512, 533 (E.D. Ky. 2021); *Faul v. Bd. of Educ. of Danville Indep. Sch.*, No. 5:23-CV-277-KSF, 2013 WL 1511746, at *3 (E.D. Ky. Apr. 9, 2013) (finding that "Kentucky law does not recognize a cause of action for alleged violations of Kentucky constitutional rights."). Accordingly, the Court finds that Aker's claims in Count Two fail as a matter of law, and Defendants' Motion is **granted** as to Count Two of the Complaint.

### 3.    *Slander of Title*

Defendants move for summary judgment on Aker's slander of title claim. The Court determined *supra* that Aker had not met his burden of proving a slander of title claim. *Supra* § III(B)(3). Accordingly, since Aker cannot establish his claim, Defendants are entitled to summary judgment on his slander of title claim and Defendants' Motion is **granted** as to Count Three.

### 4.    *Negligence*

Finally, Defendants move for summary judgment on Aker's negligence claim. The Court determined that Aker failed to establish a prima facie case of negligence. *Supra* § III(B)(4). Accordingly, since Aker cannot meet his burden, Defendants are entitled to

summary judgment on his negligence claim and Defendants' Motion is **granted** as to Count Four.

## IV.    CONCLUSION

Thus, for the reasons stated herein, **IT IS ORDERED** that:

(1)    Plaintiff's Motion for Summary Judgment (Doc. # 32) is **DENIED**;

(2)    Defendants' Motion for Summary Judgment (Doc. # 30) is **GRANTED IN PART** and **DENIED IN PART**, being **granted** with respect to Counts Two, Three, Four and the procedural due process claims of Count One, and **denied** with respect to the substantive due process claims of Count One.

(3)    The parties are **DIRECTED** to file a **Joint Status Report within thirty (30) days from the date of entry of this Order** indicating whether they would be amendable to pursuing mediation, either privately or court-facilitated, as to the remaining claims.

(4)    Upon receiving the Status Report referenced in paragraph (3) above, the Court will enter a follow-up pretrial Order addressing next steps in this case.

This 4th day of August, 2026.

Signed By:

David L. Bunning

Chief United States District Judge

G:Judge-DLB\DATA\ORDERS\Cov2024\24-83 MOO re Cross-MSJs.docx