**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CIVIL ACTION NO. 24-83-DLB**

**OCTAVIAN AKER** **PLAINTIFF**

**v.** **MEMORANDUM ORDER**

**CITY OF DAYTON, et al.,** **DEFENDANTS**

***** ***** *****

This matter is before the Court upon Defendants City of Dayton, Kentucky and Cassie Patterson's Motion for Reconsideration pursuant to Federal Rule of Civil Procedure 54(b). (Doc. # 42). Plaintiff filed his Response (Doc. # 46), and Defendants have filed their reply (Doc. # 47). Therefore, the motion is ripe for the Court's review. For the following reasons, Defendants' Motion will be **granted.**

## I. FACTUAL AND PROCEDURAL BACKGROUND

Because the facts of this matter have been previously set forth by this Court with detail (Doc. # 41 at 1-6), only a short summary need be stated here. Plaintiff Octavian Aker owns thirteen rental properties in the city of Dayton, Kentucky (the "City"), where Defendant Cassie Patterson serves as Code Enforcement Officer. (Doc. # 32 at 3; Doc. # 26 at 9:6–9).

In September 2022, the City enacted a rental licensing ordinance requiring landlords to register their properties and pay annual fees by April 15, 2023. (Doc. # 30 at 4; Doc. # 32 at 3; Doc. # 1-5 at 6; Doc. # 1-6). The City issued Aker citations on February 15, 2023, before the compliance deadline, imposing $140 in fines per property. Aker appealed the citations, arguing they were premature and improper. (*See* Doc. # 1-

8; Doc. # 25 at 75:14–19). Following a May 15, 2023 hearing, the City of Dayton Code Enforcement Board (the "Board") upheld the citations and imposed $61,680 in rental-license fines and $500 in vacant-property fines. (*See* Doc. # 1-14). Aker maintains that he never received the Board's final orders or the City's notices of its decisions. (*Id.*; Doc. # 1-16 at 4; Doc. # 25 at 91:10–13). He did not appeal to Campbell County District Court. (Doc. # 25 at 96:4–16).

In July 2023, the City placed liens on Aker's properties. (Doc. # 26 at 137:14–22; Docs. # 1-6, 1-8, 1-14, 1-16; Doc. # 27 at 85:4–12). The parties subsequently entered a settlement agreement under which Aker agreed to list and make reasonable efforts to sell his properties within ninety days and apply the proceeds toward his debts. In exchange, the City agreed to suspend further code-enforcement actions and dismiss two pending Campbell County court cases. (Doc. # 1-18). Aker sold four properties and applied $27,519.72 toward his liens but was unable to sell the remaining properties, which he attributes, in part, to the City and Patterson's alleged failure to respond to prospective buyers' requests for information. (Doc. # 32 at 60 ¶¶ 8–9; Doc. # 25 at 137:25–138:15). On February 6, 2024, the City terminated the settlement agreement for alleged noncompliance, demanded full payment of the liens, and resumed code-enforcement activities. (*See* Doc. # 1-21).

Aker filed his Complaint in this Court on May 14, 2024. (*See* Doc. # 1). In his Complaint, he asserted four causes of action: violations of his right to due process under the Fourteenth Amendment (Count One); violations of his right to due process under the Kentucky Constitution (Count Two); slander of title (Count Three); and negligence

against Cassie Patterson in her individual and official capacities (Count Four).[1] Defendants filed their Answer on August 9, 2024. (*See* Doc. # 8). The parties then engaged in discovery for nearly sixteen months. At the end of the discovery period, the parties filed cross Motions for Summary Judgment. (Docs. # 30 and 32).

On August 4, 2026, this Court issued its Memorandum Opinion and Order. In it, the Court denied Plaintiff's Motion for Summary Judgment and granted in part and denied in part Defendants' Motion for Summary Judgment, being granted with respect to Counts Two, Three, Four and the procedural due process claims of Count One, and denied with respect to the substantive due process claims of Count One. (Doc. # 41 at 30).

On August 13, Defendants filed the instant Motion for Reconsideration. (Doc. # 42). In it, they raise two contentions: 1) that the Court erred by not fully addressing Patterson's qualified immunity defense (*id*. at 4); and 2) that the Court erred in its application of the "shock the conscience" standard. (*Id*. at 4-10). That motion having been fully briefed, it is ripe for the Court's review.

## II. ANALYSIS

### A. Standard of Review

Rule 54(b) provides that "any order ... that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties ... may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). The right of district courts to reconsider interlocutory orders is well-established in the Sixth Circuit. *See Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) ("District courts have authority both under common

---

[1] Aker also brings a claim for attorney's fees under 42 U.S.C. § 1988 (Count Five), stemming from the City's alleged violations of his civil rights.

law and Rule 54(b) to reconsider interlocutory orders and to reopen any part of a case before entry of final judgment." (citing *Mallory v. Eyrich,* 922 F.2d 1273, 1282 (6th Cir. 1991))). However, the grounds for reconsideration are limited. *Id*. ("[C]ourts will find justification for reconsidering interlocutory orders when there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." (citing *Reich v. Hall Holding Co*., 990 F. Supp. 955, 965 (N.D. Ohio 1998))). "[D]istrict courts have inherent power to reconsider interlocutory orders and reopen any part of a case before entry of a final judgment." *In re Saffady*, 524 F.3d 799, 803 (6th Cir. 2008). Requests for reconsideration are generally construed as motions to alter or amend a judgment under Rule 59(e) of the Federal Rules of Civil Procedure. *Moody v. Pepsi-Cola Metro. Bottling Co*., 915 F.2d 201, 206 (6th Cir. 1990); *see also United States ex rel. SNAPP, Inc. v. Ford Motor Co*., 618 F.3d 505, 512 (6th Cir. 2010).

**B. Cassie Patterson's Qualified Immunity Defense**

The Court begins with Patterson's federal Qualified Immunity defense. Defendants raised the issue in their Motion for Summary Judgment (Doc. # 30 at 19) and the Court failed to address it in its Order. (Doc. # 41 at 25). This omission represents a "clear error" for which Reconsideration is warranted. *Rodriguez,* 89 F. App'x at 959 (6th Cir. 2004).

Qualified immunity "shields officials from civil liability so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). A qualified immunity inquiry involves two questions: whether defendants violated a constitutional right and whether that right was clearly established. *Pearson*, 555 U.S. at 232. On summary judgment, the court must analyze

these questions after construing the facts in the light most favorable to the party asserting the injury and drawing all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 377 (2007); *see also Ortiz ex rel. Ortiz v. Kazimer*, 811 F.3d 848, 850–51 (6th Cir. 2016). Put simply, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Qualified immunity is an affirmative defense. *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002). The defendant therefore "bears the burden of pleading the defense, but the plaintiff bears the burden of showing that the defendant's conduct violated a right so clearly established that a reasonable official in his position would have clearly understood that he or she was under an affirmative duty to refrain from such conduct." *Id*. In other words, "[t]he ultimate burden of proof is on the plaintiff to show that the defendant is not entitled to qualified immunity." *Id*. To prevail, Aker must establish a violation "beyond debate," *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011), which "usually means the claimant must identify a case with facts similar enough that it squarely governs this one," *Moore v. Oakland County*, 126 F.4th 1163, 1167 (6th Cir. 2025) (quotation omitted).

Plaintiff argues that, because "Patterson's duties and responsibilities are clearly outlined in the City's Code," her failure to follow such duties to the letter undermines her entitlement to qualified immunity. (Doc. # 38 at 22). The qualified-immunity inquiry, however, does not hinge on Patterson's performance alone, but whether her conduct violated Aker's *individual* constitutional right. And though Plaintiff asserts that Patterson's conduct was an attempt to deprive him of his "property interests," he has not identified facts which, taken as true, give this Court a basis for holding Patterson personally liable. Plaintiff has not directed the Court to case law involving state and local administrative

actions similar to the present case that places the "constitutional question beyond debate." *Mullenix*, 577 U.S. at 11–12. Accordingly, Defendant Patterson is entitled to qualified immunity to the extent she is sued in her individual capacity.

**C. Substantive Due Process "Shocks the Conscience" Inquiry**

In its Motion, Defendants request that this Court reconsider its reasoning concerning the "shocks the conscience" standard. (Doc. # 42 at 6). In its Memorandum Opinion and Order, this Court found:

> that a reasonable jury could determine that Defendants' behavior "shocks the conscience." The Court believes that, given the extent, number, and nature of Defendants' errors and how they cascaded as this lawsuit has progressed, this issue is best addressed by the trier of fact. While the individual steps in the process do not rise to the level of arbitrary or conscience-shocking, the collective actions taken together very well may. That is for the jury to decide.

(Doc. # 41 at 26).

Upon further review, the Court did not reserve factual questions of credibility for a jury, but the question of whether a series of facts (i.e., the City's handling of Plaintiff's lien enforcement), taken together, crossed a constitutional threshold that "shocked the conscience." This was an error.

Although the Sixth Circuit has yet to explicitly weigh in, several of our sister circuits have held that "shock the conscience" determinations are reserved for the judge, not the jury. *See Perez v. Unified Gov't of Wyandotte Cnty./Kansas City, Kan.,* 432 F.3d 1163, 1168 n.4 (10th Cir. 2005) ("Determining the proper legal standard is generally a question of law, not a question of fact"); *Benn v. Universal Health Sys., Inc.*, 371 F.3d 165, 174 (3d Cir. 2004) ("Whether conduct shocks the conscience is a question of law for the court to decide"); *Terrell v. Larson*, 396 F.3d 975, 981 (8th Cir. 2005) (en banc) ("Whether conduct

shocks the conscience is a question of law"); *see also City of Monterey v. Del Monte Dunes at Monterey*, Ltd., 526 U.S. 687, 753 (1999) (Souter, J., concurring in part and dissenting in part) ("Substantive due process claims are, of course, routinely reserved without question for the court" (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 853, 855 (1998)).

The Sixth Circuit has stated the inquiry as follows: "[t]he test for substantive due process claims of this type is whether the conduct complained of 'shocks the conscience' *of the court*." *Mertik v. Blalock*, 983 F.2d 1353, 1367-68 (6th Cir. 1993) (emphasis added) (citation omitted). Courts in this Circuit *have* left the question of whether conduct shocks the conscience go to a jury, but only where factual and credibility determinations were required. *See Chesher v. Neyer*, No. 1:01-CV-00566, 2004 WL 7401873, at *9 (S.D. Ohio July 29, 2004) ("The Court finds this case rife with credibility and factual determinations that are properly within the province of the jury. Ultimately, it is appropriate in this case for a jury to weigh the facts and to determine whether the conduct of each individual Defendant rises to the level of outrageous"); *see also Rivas v. City of Passaic*, 365 F.3d 181, 204 (3d Cir. 2004) (recognizing that disputed conduct, however unlikely, is properly left for a jury's determination whether it happened and whether it is shocking to the conscience).

Here, the City issued Aker a series of citations for failure to abide by the new ordinance. (Doc. # 1-8). After a hearing before the Board where Aker was present with counsel (Doc. # 25 at 77:22-25), the Board upheld the City's citations and imposed fines against Aker for failing to register and pay the required fees for the license program. (*See* Doc. # 1-14). Aker claims, and the Court takes as true, that he did not receive a copy of

the final version of the Board's order. (*Id.*; Doc. # 1-16 at 4; Doc. # 25 at 91:10–13). Each of the Board's Final Orders included a paragraph titled "Acknowledgment of Respondent," outlining the Respondent's acknowledgements of the Board's decision, right to appeal the decision to Campbell County District Court, and understanding of the imposition of a lien on his properties in the event of nonpayment of the civil fines levied against him. (*See* Doc. # 1-14 at 5). Cassie Patteron admits that it was an error that she signed as the Respondent under the acknowledgment paragraph of the Board's decision. (Doc. # 26 at 126:23–128:9). Taking these, and all of Plaintiff's other allegations (Doc. # 38 at 8), as true, what emerges is a picture of a rushed enforcement process where City officials targeted Plaintiff's property, intent on enforcing the new property regulations against him.

Nonetheless, as a matter of law, Dayton's conduct, rough and crude as it may have been, does not "shock the conscience." A review of the Sixth Circuit's cases touching on blighted properties is instructive here. Though in the context of addressing blighted properties rather than rental license citations, in *McIntosh v. City of Madisonville, Kentucky*, the Sixth Circuit weighed whether the City's condemnation and destruction of Plaintiff's property "shocked the conscience." 126 F.4th 1141 (6th Cir. 2025). There, the plaintiff "point[ed] to evidence that city officials turned off the unit's power to prevent [plaintiff] from making further repairs, employed police to intimidate him by supervising demolition day, and never provided a hearing along the way." *Id.* at 1149. Nonetheless, noting that meeting the "shock the conscience" test is "no mean feat," the Sixth Circuit held that, plaintiff's factual allegations taken as true, the city's "police power authority remained legitimate. A mere dispute over the exercise of an accepted police power does not create a substantive due process problem ...." *Id*. This was because "[o]nly the most

egregious official conduct can be said to be arbitrary in the constitutional," as opposed to conversational, "sense." *Cnty. of Sacramento*, 523 U.S. at 846 (quotation omitted). While condemnation and destruction of a personal property differs factually from assessing liens against multiple rental properties, the police power underlying the actions, there, was similar. It is this police authority to which the Sixth Circuit afforded broad deference by upholding the city of Madisonville's condemnation "[b]ecause we know of no court that 'has held that it shocks the conscience for municipal authorities, acting pursuant to an unchallenged ordinance, to order the destruction of a building found by responsible officers to be a nuisance or threat to public health or safety.'" *McIntosh*, 126 F.4th at 1149 (quoting *Harris v. City of Akron*, 20 F.3d 1396, 1405 (6th Cir. 1994)).

While its process contained numerous flaws, the fundamental police powers exercised by the City (i.e., citations, a hearing before the Board, fines, and liens) were all "common steps in a municipality's code enforcement process." (Doc. # 41 at 13). If the government action does not shock the conscience, that action does not violate substantive due process so long as it is rationally related to a legitimate state interest. *Valot v. Southeast Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1993). Those actions bore a direct relationship with the City's important interests in protecting renters. While not directly binding, the Third Circuit's decision in *Highway Materials* illustrates the broad range of accepted municipal activity that falls short of shocking the conscience. *Highway Materials, Inc. v. Whitemarsh Twp.*, 386 F. App'x 251, 258 (3d Cir. 2010). There, even a scheme to improperly apply ordinances, treat a property owner differently from nearby owners, actively inhibit a property owner's opportunity to develop its land, and intentionally disregard duties under Pennsylvania state law did not amount

to behavior that shocks the conscience.[2] Accordingly, this Court's previous Order, reserving whether Defendant's conduct "shocked the conscience" for a jury when the underlying facts were not in dispute, was a clear legal error.

## III. CONCLUSION

For the reasons stated herein, **IT IS ORDERED** as follows:

(1) Defendant's Motion for Reconsideration (Doc. # 42) is **granted**. Defendant Patterson is entitled to qualified immunity. Defendants are entitled to summary judgment on Plaintiff's substantive due process claim (Count I); and

(2) A separate **Judgment** will be entered contemporaneously with this Order.

This 18th day of November, 2026.

**Signed By:**

***David L. Bunning*** DB

**Chief United States District Judge**

---

2 *See also Chesterfield Dev. Corp. v. City of Chesterfield*, 963 F.2d 1102, 1105 (8th Cir. 1992) ("Our decision [affirming dismissal under Rule 12(b)(6)] would be the same even if the City had knowingly enforced the invalid zoning ordinance in bad faith and had no claim that St. Louis County zoning applied to the property. A bad-faith violation of state law remains only a violation of state law.").